J-S21016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BCJ MANAGEMENT, L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEEA RUSSELL | : | No. 957 WDA 2017 |

Appeal from the Order Entered May 30, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  LT-17-000323

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                         **FILED MAY 08, 2018**

BCJ Management, L.P. (Appellant) appeals from the order sustaining the preliminary objections of Appellee, Leea Russell (Russell), and dismissing Appellant's eviction complaint with prejudice.  We affirm.

Appellant is a property management firm.  On October 22, 2014, Appellant and Russell executed a public housing agency (PHA) lease agreement for Russell to lease an apartment at 100 Jamal Place, Pittsburgh, Pennsylvania, 15213.  The apartment is part of the Oak Hill Apartments housing community (the Premises).  Pursuant to Section 9(K)(2) of the lease, Russell agreed to not engage in "[a]ny criminal activity that threatens the health, safety, or right to peaceful enjoyment of the Premises by members of the Household, Guests, other Tenants or employees of [Appellant] or persons residing in the **immediate vicinity** of the Premises."  Lease Agreement at 10,

Ex. to Appellant's Complaint (emphasis added). If Russell failed to comply with this provision, it "shall be considered a material breach of the Lease and cause for eviction." *Id.* at 9. Additionally, Section 20A(b) of the lease sets forth conduct that would result in immediate eviction, including "criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents, employees of [Appellant], or persons residing in the **immediate vicinity** of the premises." *Id.* at 19 (emphasis added). Pertinently, the lease does not define "the immediate vicinity of the Premises."

On October 16, 2016, Appellant was arrested and charged with simple assault and terroristic threats as a result of an incident that occurred in a courtyard outside of an apartment at 2523 Chauncey Drive, Pittsburgh, PA 15219, located in the Bedford Dwellings housing community, approximately 1.2 miles from the Premises. The complaining witness, Darcetta Epps, told police that Russell punched Ms. Epps' face several times, drew a small black handgun from her pocket, pointed it at Ms. Epps' face, and screamed "I'm going to kill you!"[1] According to Russell, the terroristic threats charge was withdrawn, and she was found not guilty on the remaining charges — two counts of simple assault. Russell's Brief at 5 n.2, *citing **Commonwealth v. Russell**, CP-02-CR-0012827-2016 (Allegheny Co.).

_____

[1] City of Pittsburgh Bureau of Police Investigative Report, 10/16/16, at 1-2, Ex. to Appellant's Complaint. Ms. Epps lived at Bedford Dwellings, and also told police that on the previous evening, she and Russell had an altercation to which police responded.

On January 31, 2017, Appellant filed an eviction complaint in the Magisterial District Court. The court found in Russell's favor, and Appellant appealed to the Court of Common Pleas, filing a complaint on March 30, 2017. The complaint averred: the Premises are "located within a larger community commonly known as Oak Hill;" the courtyard where the alleged assault occurred is "located within the housing project known as Bedford Dwellings;" and the Premises and the courtyard "are within three (3) to four (4) minutes driving distance . . . and therefore . . . Epps is a person residing in the immediate vicinity of the Premises." Appellant's Complaint, 3/30/17, at ¶¶ 3, 12, 14. The complaint further asserted that Appellant's alleged assault was a breach of Sections 9(K)(2) and 20A(b) of the lease and thus eviction was justified.

Russell, represented by counsel, filed preliminary objections, arguing that Appellant's complaint was legally deficient because the alleged criminal activity did not occur in, nor involve a resident from, the "immediate vicinity" of the Premises. Russell pointed out that Bedford Dwellings is located more than one mile from the Premises, and that the two locations have different zip codes and are separated by a third neighborhood, Middle Hill, as well as undeveloped woods. Appellant filed an answer stating, for the first time, that the Premises and Bedford Dwellings "are both located within the Hill District, a community that is represented primarily by one (1) member of Pittsburgh City Council and one (1) member of Allegheny County Council." Appellant's

Answer to Preliminary Objections, 5/8/17, at ¶ 4.

On May 31, 2017, the trial court sustained Russell's preliminary objections and dismissed Appellant's complaint with prejudice. The court took judicial notice of an online Google map[2] showing that, depending on the route, the driving distance between the Premises and the location of the alleged assault was 1.2 to 1.6 miles and the walking distance was 1.1 to 1.5 miles. Trial Court Opinion, 10/12/17, at 3 n.1. The court held that these distances were sufficient to support a determination that, as a matter of law, the alleged crime did not occur "within the immediate vicinity of the premises." *Id.* at 3. The trial court thus concluded "that it was clear that [Appellant] would be unable to prove facts sufficient to establish its right to relief." *Id.* We note that in support, the court cited *Powell v. Hous. Auth.*, 760 A.2d 473 (Pa. Cmwlth. 2000) ("*Powell I*"), *rev'd*, 812 A.2d 1201 (Pa. 2002) ("*Powell II*"), in which the trial court upheld the administrative agency's factual finding that, pursuant to the term "immediate vicinity" in Section 8 of the United States Housing Act, 42 U.S.C. § 1437f, the location of a crime 0.8 miles from the Section 8 tenant's residence was not in the residence's "immediate vicinity."[3] The court also relied on *Hous. Auth. of City of Pittsburgh v. Mitchell*, 2014

---

[2] https://www.google.com/maps/dir/100+Jamal+PI,+Pittsburgh,+PA+15213/2523+Chauncey+Dr,+Pittsburgh,+PA+15219/@40.4514855,-79.9754054,17z/data=!3m1!4b1!4m8!4m7!1m0!1m5!1m1!1s0x8834f3d03a7bc6c7:0x881762a80e736ae7!2m2!1d-79.9732167!2d40.4514855.

[3] We discuss *Powell I* and *Powell II*, *infra*, at pages 8 - 9.

Pa. Dist. & Cnty. Dec. LEXIS 5022, which cited **Powell I** and held that criminal activity that occurred more than 1.5 miles from the tenant's residence was not in the immediate vicinity of the residence.

Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors. It presents one issue for our review:

> Whether the Trial Court committed an error of law and/or abused its discretion by sustaining the Preliminary Objections of Russell and dismissing [Appellant's] Complaint without permitting [Appellant's] claims to proceed to a factual hearing for the purpose of determining (a) the appropriate definition of the neighborhood relevant to [Appellant's] claims and (b) whether Russell's criminal activity occurred within the immediate vicinity of her residential dwelling unit and the housing community wherein such unit is located?

Appellant's Brief at 3.

Appellant first cites the Oxford Dictionary definition of "neighborhood" as "a district, especially one forming a community, within a town or city." **Id.** at 11-12. Appellant maintains the term "neighborhood" is not limited by definition of a certain distance, and reiterates that the Premises and Bedford Dwellings are both located within Pittsburgh's Hill District. Next, Appellant reasons that the trial court's reliance on **Powell I** and **Mitchell** was misplaced because in those cases, the trial court reached its decision after a factual record was made. Appellant thus concludes that the trial court's ruling was manifestly unreasonable because there was no factual inquiry, and requests remand for a hearing to determine whether the Premises and Bedford Dwellings "are located within the same neighborhood." **Id.** at 13-14.

This Court has stated:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. "Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

*Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 208 (Pa. Super. 2012)

(citations omitted).

"When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used.

*Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1274-75 (Pa. 2002) (citations

omitted).

Appellant's complaint in eviction is based on an alleged breach of

contract: that Russell breached clauses in the lease prohibiting her from

perpetrating criminal activity that threatens the health, safety, or right to peaceful enjoyment of others residing in the "immediate vicinity" of the Premises. However, as stated above, the term "immediate vicinity" is not defined in the lease. Rather than addressing the plain meaning of the terms "immediate" and "vicinity," however, Appellant argues that this Court — and the trial court — should consider whether the Premises and Bedford Dwellings are in the same "neighborhood." Appellant's Brief at 11-12, *citing* https://en.oxforddictionaries.com/definition/us/neighborhood. However, as Russell points out, Appellant wholly ignores the word "immediate." **See** Russell's Brief at 13 (Appellant's interpretation "would render superfluous the key modifier 'immediate'").[4]

While Appellant's complaint characterized the Premises as located "within a larger community commonly known as Oak Hill," the only support for Appellant's claim that the two locations were in the same "immediate vicinity" were statements that they are a three to four-minute drive apart and that they are both in the Hill District. **See** Appellant's Complaint at ¶ 14; Appellant's Answer to Preliminary Objections at ¶ 4. Accordingly, we hold that the trial court did not err in finding these statements insufficient to establish that the alleged assault occurred in the "immediate vicinity" of the Premises.

---

[4] Appellant's source defines immediate as "nearest or next to in space." **See** https://en.oxforddictionaries.com/definition/us/immediate.

Therefore, the court did not abuse its discretion or commit an error of law in sustaining Russell's preliminary objections and dismissing Appellant's complaint with prejudice. *See Weiley*, 51 A.3d at 208.

Finally, because the trial court and both parties rely on the Commonwealth Court's decision in *Powell I*, we note that *Powell I* may be distinguished because, while that decision addressed the term "immediate vicinity" as it appears in federal Section 8 and HUD regulations, Appellant's issue presents a question of contract interpretation.[5] Further, the claim raised in *Powell I* — and not reached in *Powell II* on mootness grounds — was that the trial court, on statutory appeal from an administrative agency's decision, erred in disregarding factual findings made by the agency's hearing officer. *Powell I*, 760 A.2d at 483. The Commonwealth Court resolved this issue by holding that it was a question of law to be properly decided by the trial court. *Id.*; *see Powell II*, 812 A.2d at 1208 n.9 ("Where, as here, a complete record was developed before the local agency, the court reviewing the matter on appeal must affirm the local agency unless it is determined that constitutional rights were violated, that an error of law was committed, that the procedure before the agency was contrary to the statute or that necessary findings of

---

[5] While the lease terms at issue in this case are based on Section 8 provisions, Appellant has made no mention before the trial court or in its appellate brief that its lease with Russell involved PHA assistance. *See* Lease Agreement at 1 (title of lease is "OAK HILL LEASE AGREEMENT, (PHA-Assisted Unit)").

fact were unsupported by substantial evidence."). Here, there was no agency decision and corresponding appeal to the Court of Common Pleas. Instead, Appellant filed a landlord/tenant eviction complaint in the Magisterial District Court, and subsequently, on appeal, a complaint in the Court of Common Pleas.[6] Nonetheless, in the instant case, **Powell I** is instructive where the record supports the trial court's determination that "the alleged crime at issue occurred at a location that was not within the immediate vicinity of the [P]remises." Trial Court Opinion, 10/12/17, at 3.

In sum, we hold the trial court did not abuse its discretion or err in sustaining Russell's preliminary objections and dismissing Appellant's complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8 /2018

---

[6] We also decline to consider the Court of Common Pleas' decision in **Mitchell**, 2014 Pa. Dist. & Cnty. Dec. LEXIS 5022. **See Sysco Corp. v. FW Chocolatier, LLC**, 85 A.3d 515, 520 n.2 (Pa. Super. 2014) ("It is well-settled that Court of Common Pleas decisions 'are not binding precedent for this Court.'").