J-A20012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CUSTOM BUILDING SYSTEMS, LLC; PRACTICAL SOFTWARE SOLUTIONS, INC.; PROFESSIONAL BUILDING SYSTEMS, INC., AS ITSELF AND AS A MEMBER OF AMERICAN MODULAR TRANSPORT, LLC; AMERICAN MODULAR TRANSPORT, LLC | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : | |
| RONALD H. NIPPLE, INDIVIDUALLY; CONNIE I. NIPPLE, INDIVIDUALLY AND AS AN OWNER OF ICON REALTY, LLC; KEVIN HICKS, INDIVIDUALLY AND AS PRESIDENT OF ICON LEGACY CUSTOMER MODULAR HOMES, LLC; ICON LEGACY CUSTOM MODULAR HOMES, LLC A/K/A LEGACY MODULAR HOMES, LLC AND LEGACY CUSTOM MODULAR HOMES, LLC; ICON LEGACY TRANSPORT, LLC | : : : : : : : : : : : : : | No. 127 MDA 2017 |
| Appellees | | |

Appeal from the Order Entered December 30, 2016
In the Court of Common Pleas of Snyder County
Civil Division at No(s):  CV-194-2011

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:　　　　　**FILED OCTOBER 31, 2017**

Appellants, Custom Building Systems, LLC ("CBS"), Practical Software Solutions, Inc. ("PSS"), Professional Building Systems, Inc. ("PBS"), as itself and as a member of American Modular Transport, LLC ("AMT") and AMT, appeal from the order entered in the Snyder County Court of Common Pleas,

which granted summary judgment in favor of Appellees, Ronald H. Nipple, Connie I. Nipple, and Kevin Hicks, Legacy Custom Modular Homes, LLC ("Icon") a/k/a Legacy Modular Homes, LLC and Legacy Custom Modular Homes, LLC, and Icon Legacy Transport, LLC in this employment contract action. We affirm.

The relevant facts and procedural history of this care are as follows. William French owns several entities in the manufactured-home industry, including Appellant companies, CBS, PBS, PSS, and AMT. PBS and CBS manufacture and sell modular homes. PSS and AMT provide software and transportation services, respectively, to CBS and PBS. On August 1, 2005, Appellee Ronald Nipple entered into an employment agreement ("Agreement") to serve as general manager of CBS. The Agreement provided, in relevant part, as follows:

1. <u>General</u>

\*   \*   \*

F. As used in this Agreement, the term "Companies" shall mean (i) [CBS], (ii) [PBS], ([iii]) Professional Building Systems of North Carolina LLC ("PBS-NC"); ([iv]) [AMT]. ([v]) Professional Structures, Inc. ("PSI"), ([vi]) [PSS], ([vii]) all subsidiaries and successors of any of the [Companies], and ([viii]) any other companies owned in whole or in part by William D. French.

\*   \*   \*

3. <u>Non-Solicitation Covenants</u>

\*   \*   \*

C. During the term of this Agreement, and for a period of three years from the date of termination of this Agreement, the Employee shall not, directly or indirectly, sell, or attempt to sell, any modular structure to any builder, or other person or entity, to whom any of the Companies sold modular structures at any time during the twelve months prior to the Employee's cessation of employment hereunder.

(**See** Ronald Nipple Employment Agreement with CBS; Appellees' Statement of Undisputed Facts, Exhibit E at 1-3; R.R. at 417a-419a). CBS subsequently terminated Mr. Nipple's employment on April 20, 2007.

In early 2008, Appellee Icon formed as a modular home manufacturing company.[1] Icon Legacy Transport, LLC ("Icon Transport"), which hauls Icon's modular homes, also formed. Mr. Nipple's wife, Appellee Connie Nipple, invested in Icon and served as Icon's secretary until 2011. Mr. Nipple's son-in-law, Appellee Kevin Hicks, has been president of Icon since its formation. Between the date of Icon's formation and April 2010, Mr. Nipple was not an Icon employee, but he had an office at Icon, maintained regular working hours at Icon, and occasionally sat in on company meetings. Between its formation and April 2010, Icon submitted bids and sold modular homes to several of Appellants' customers.

On April 19, 2011, Appellants and Mr. French filed a writ of summons against Appellees. Appellants and Mr. French filed a complaint against

---

[1] The name of Icon changed several times since its formation. Icon's former names included Legacy Custom Modular Homes, LLC.

Appellees on August 19, 2011, for breach of contract, unjust enrichment, and breach of fiduciary duty.  On September 1, 2011, Appellants and Mr. French filed a first amended complaint.  Appellees filed on September 19, 2011, preliminary objections to the first amended complaint, which the court sustained in part and overruled in part on November 28, 2011.  On December 19, 2011, Appellants and Mr. French filed a second amended complaint, to which Appellees filed preliminary objections on January 5, 2012.

Appellants and Mr. French filed a third amended complaint on January 23, 2012, raising multiple counts of breach of contract, breach of the duty of loyalty and fiduciary duty, misappropriation of trade secret and proprietary information, unfair competition, tortious interference with existing contractual and business relationships, tortious interference with prospective contractual and business relationships, and civil conspiracy.  That same day, Appellants filed a motion to discontinue the claims of Mr. French and remove Mr. French from the caption, which the court granted on January 24, 2012.[2] Appellees filed preliminary objections to the third amended complaint, which the court sustained in part and overruled in part on September 14, 2012, striking all unfair competition claims against Appellees.  Appellees filed an

_____

[2] As a result of the January 24, 2012 order, Mr. French was no longer a party to the trial court proceedings in this matter.  Mr. French is not a party to this appeal.

answer and new matter to the third amended complaint on November 5, 2012.

By stipulation on July 15, 2016, Appellants discontinued their claims asserting breach of duty of loyalty and fiduciary duty and misappropriation of trade secrets and proprietary information.  That same day, Appellees filed a motion for summary judgment on the remaining claims, which the court granted on December 30, 2016.  Appellants filed a timely notice of appeal on January 17, 2017.  On January 19, 2017, the court ordered Appellants to file a concise statement errors complained of on appeal per Pa.R.A.P. 1925(b); Appellants timely complied on February 6, 2017.

Appellants raise the following issues for our review:

> IS THERE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER [APPELLEE] RONALD NIPPLE INDIRECTLY SOLD MODULAR HOMES TO CUSTOMERS OF [CBS] AND [PBS] IN VIOLATION OF HIS RESTRICTIVE COVENANT, WHERE THE RECORD SHOWS THAT [ICON] SOLD MODULAR HOMES TO 28 OF THE RESTRICTED CUSTOMERS DURING THE YEARS OF [APPELLEE] RONALD NIPPLE'S RESTRICTED PERIOD, AND WHERE THE RECORD SHOWS THAT RONALD NIPPLE WAS THE KEY PERSON IN FORMING, FINANCING, AND OPERATING ICON AND HAD *DE FACTO* CONTROL OF THE COMPANY?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION WHERE IT MADE A FINDING OF FACT THAT ENFORCEMENT OF THE "INDIRECT" SALES RESTRICTION WOULD PROHIBIT [APPELLEE] RONALD NIPPLE FROM CONTINUING HIS CAREER IN "ANY CAPACITY," WHERE THERE IS NO EVIDENCE OF RECORD TO SUPPORT SUCH A CONCLUSION, AND WHERE THE RESTRICTIVE COVENANT APPLIED ONLY TO SELECT CUSTOMERS OF [APPELLANTS]?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION IN

DISMISSING THE CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS WHERE THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE PRIOR CUSTOMER RELATIONSHIPS BETWEEN [CBS], [PBS], AND THEIR 28 CUSTOMERS DEMONSTRATE THAT THERE WAS A REASONABLE LIKELIHOOD THAT THESE CUSTOMERS WOULD HAVE PLACED THEIR ORDERS WITH [CBS] OR [PBS], ESPECIALLY IF [ICON] WAS RESTRICTED FROM SELLING TO THESE CUSTOMERS?

DID THE TRIAL COURT ERR IN FINDING THAT [APPELLEES] DID NOT COMMIT CIVIL CONSPIRACY EVEN THOUGH THE RECORD ESTABLISHES THAT ALL [APPELLEES] WERE AWARE OF RONALD NIPPLE'S RESTRICTIVE COVENANT, HELPED CONCEAL HIS INITIAL INVOLVEMENT WITH [ICON], AND HIRED SALESMEN WITH CUSTOMER ACCOUNTS FROM CBS AND PBS IN ORDER TO SELL MODULAR HOMES TO THE VERY CUSTOMERS TO WHOM RONALD NIPPLE WAS PROHIBITED FROM SELLING?

DID THE COURT ERR IN FINDING THAT [CBS] AND [PBS] DID NOT DEMONSTRATE PROBABLE, INFERENTIAL, OR DIRECT PROOF OF THEIR LOSS WHERE THEY PRODUCED PRECISE CALCULATIONS OF REVENUE, LABOR, MATERIAL, AND OTHER COSTS, AND PROJECTED PROFIT FOR THE SALE OF MODULAR HOMES?

(Appellants' Brief at 3-5).

In reviewing a trial court's grant of summary judgment,

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

Significantly:

A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. A jury is not permitted to find that it was a defendant's [actions] that caused the plaintiff's injury based solely upon speculation and conjecture; there must be evidence upon which logically its conclusion must be based. In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation. Additionally, a party is not entitled to an inference of fact that amounts merely to a guess or conjecture.

***Krishack v. Milton Hershey School***, 145 A.3d 762, 766 (Pa.Super. 2016)

(internal citation omitted).

"To support a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damage." ***Pittsburgh Construction Company v. Griffith***, 834 A.2d 572, 580 (Pa.Super. 2003), *appeal denied*, 578 Pa. 701, 852 A.2d 313 (2004).

Contract construction and interpretation is a question of law for the court to decide. ***Profit Wize Marketing v. Wiest***, 812 A.2d 1270, 1274 (Pa.Super. 2002); ***J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.***, 810 A.2d 672, 681 (Pa.Super. 2002), *appeal denied*, 573 Pa. 704, 827 A.2d 430 (2003) (reiterating: "The proper interpretation of a contract is a question of law to be determined by the court in the first instance"). In construing a contract, the intent of the parties is the primary consideration. ***Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky***, 889 A.2d 557, 560 (Pa.Super. 2005).

> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used. On the contrary, the terms of a contract are ambiguous if

the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense. Additionally, we will determine that the language is ambiguous if the language is obscure in meaning through indefiniteness of expression or has a double meaning.

*Profit Wize Marketing, supra* at 1274-75 (internal citations and quotation marks omitted).

Where there is any doubt or ambiguity as to the meaning of the covenants in a contract or the terms of a grant, they should receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made. It is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement.

*Giant Food Stores, LLC v. THF Silver Spring Development, L.P.*, 959 A.2d 438, 448 (Pa.Super. 2008), *appeal denied*, 601 Pa. 697, 972 A.2d 522 (2009) (internal citations and quotation marks omitted). In either event, "the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa.Super. 2013).

"To maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa.Super. 2006) (citing *Gorski v.*

***Smith***, 812 A.2d 683, 692 (Pa.Super. 2002), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004)).  The elements of interference with prospective contractual relations are as follows:

> (1)  a prospective contractual relationship;
>
> (2)  the purpose or intent to harm the plaintiff by preventing the relation from occurring;
>
> (3)  the absence of privilege or justification on the part of the defendant; and
>
> (4)  the occasioning of actual damage resulting from the defendant's conduct.

***Phillips v. Selig***, 959 A.2d 420, 428 (Pa.Super. 2008), *appeal denied*, 600 Pa. 764, 967 A.2d 960 (2009).  The plaintiff bears the burden of pleading and proving each element.  ***International Diamond Importers, Ltd. v. Singularity Clark, L.P.***, 40 A.3d 1261, 1275 (Pa.Super. 2012).  To sustain the cause of action, the plaintiff must show a "reasonable probability or likelihood" that contractual relations will follow.  ***Phillips, supra*** at 428.  In determining "reasonable probability or likelihood," Pennsylvania courts apply an objective standard and consistently required more evidence than the mere existence of a current business relationship between the parties.  ***Id.***

To state a claim for civil conspiracy, "a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  ***Goldstein v. Phillip Morris, Inc.***, 854 A.2d 585,

590 (Pa.Super. 2004). Civil conspiracy requires proof by full, clear and satisfactory evidence. *Phillips, supra* at 437. "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Id.* Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa.Super. 2000).

After a thorough review of the record, the briefs of the parties, the applicable law, and well-reasoned opinions of the Honorable Michael T. Hudock, we conclude Appellants' issues on appeal merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (*See* Trial Court Opinion, filed January 31, 2017, at 1 unpaginated; Trial Court Opinion, filed December 30, 2016, at 6-13) (finding: **(1-2)** although Icon made sales to prohibited customers during restricted covenant period, no facts of record indicate Mr. Nipple was involved in sales to any of CBS' customers; record does not support finding that Mr. Nipple made sales directly or indirectly to any customers, much less customers prohibited by non-solicitation provision in Agreement; that Mr. Nipple had office at Icon and Mrs. Nipple and Mr. Hicks worked at Icon do not show Mr. Nipple was involved in sales to prohibited customers; record shows Mr. Nipple merely provided general advice to individuals at Icon; Appellants offered no evidence to show Mr. Nipple's involvement at Icon

- 11 -

exceeded advisory role; non-solicitation provision does not prohibit employees of Icon nor Icon itself from contracting with CBS customers; to apply terms of non-solicitation provision per Appellants' interpretation would effectively prohibit Appellee from continuing his career in modular home industry in any capacity; under Appellants' view, employer in modular home industry that hired Mr. Nipple in any capacity would be unable to sell to prohibited customers during the restricted covenant period; Agreement, however, does not prohibit Mr. Nipple from competing with PBS and CBS; **(3)** Appellants' relationships with customers do not rise to level of prospective contractual relationship; providing customers quotes in normal course of business does not lead to reasonable likelihood or probability of enforceable contractual relationship; although Appellants provide customers with price quote for project, customers are free to seek out multiple quotes and choose any quote; merely providing quote does not create prospective contract; also, record does not indicate Appellees intended to harm Appellants; **(4)** record does not demonstrate Appellees conducted unlawful act or acted with unlawful purpose; non-solicitation provision does not bar Mr. Nipple from competing in same field as Appellants; Agreement does not require Appellees to disclose to Appellants Mr. Nipple's lawful involvement with Icon; non-solicitation provision merely prohibits Mr. Nipple from engaging in sales, directly or indirectly, to customers of Appellants; Appellants have not offered facts of record to support claim that Mr. Nipple

violated terms of non-solicitation provision; **(5)** Appellants are not entitled to damages for lost sales because Appellants' claims for breach of contract, conspiracy, and tortious interference are without merit; further, Appellants failed to demonstrate probable, inferential, or direct proof of their loss attributable to Appellees). The record supports the trial court's rationale. Accordingly, we affirm on the basis of the trial court's opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2017

Circulated 10/05/2017 03:58 PM

FILED

2017 JAN 31 PM 12: 03

PROTHONOTARY
SNYDER CO., PA

| | |
|---|---|
| CUSTOM BUILDING SYSTEMS, LLC., et al, | : IN THE COURT OF COMMON PLEAS |
| Plaintiffs | : OF THE 17TH JUDICIAL DISTRICT |
| | : OF PENNSYLVANIA |
| vs. | : SNYDER COUNTY BRANCH |
| | : |
| RONALD H. NIPPLE, et al, | : CIVIL ACTION – LAW |
| Defendants | : NO. CV-194-2011 |
| | : |

**OPINION**

**Hudock, P.J., January 31, 2017**

Plaintiffs commenced this action by Praecipe for a Writ of Summons on April 19, 2011. This case wound its way through the court system for the next five years. On July 15, 2016, the defendants filed their Motion for Summary Judgment. The parties submitted briefs on the Motion. The court held oral argument on the Motion. The court issued its Opinion and Order granting the defendants' Motion for Summary Judgment on December 30, 2016. Plaintiffs filed a timely Notice of Appeal on January 12, 2017.

The court refers the Superior Court to the Opinion filed on December 30, 2016 for the rationale for the grant of Summary Judgment, a copy of which is attached. The Prothonotary is directed to submit the record to the Superior Court.

BY THE COURT:

MICHAEL T. HUDOCK, P.J.

107

S

CUSTOM BUILDING SYSTEMS, LLC, : IN THE COURT OF COMMON PLEAS
PRACTICAL SOFTWARE SOLUTIONS, : OF THE 17TH JUDICIAL DISTRICT
INC., PROFESSIONAL BUILDING : OF PENNSYLVANIA
SYSTEMS, INC., as itself and as a : SNYDER COUNTY BRANCH
Member of American Modular Transport, LLC, :
William D. French, Individually and as :
Owner and sole member of Custom Building :
Systems, LLC and as sole shareholder of :
Professional Building Systems, Inc., and as :
Sole shareholder of Practical Software : CIVIL ACTION - LAW
Solutions, Inc., : NO. CV-194 – 2011
                 Plaintiffs :
 :
      v. :
 :
RONALD H. NIPPLE, Individually, :
CONNIE I. NIPPLE, Individually and as :
An Owner of ICON REALTY, LLC, :
KEVIN HICKS, Individually and as :
President of ICON LEGACY CUSTOM :
MODULAR HOMES, LLC, :
ICON LEGACY CUSTOM MODULAR :
HOMES,LLC a/k/a Legacy Modular Homes, :
LLC and LEGACY CUSTOM MODULAR :
HOMES, LLC And ICON LEGACY :
TRANSPORT, LLC, :
              Defendants :

2016 DEC 30 AM 10: 30
PROTHONOTARY
SNYDER CO., PA
FILED

## OPINION

**HUDOCK, P.J., December 30, 2016**

Before the Court is Defendants' Motion for Summary Judgment and supporting brief

filed July 15, 2016. Plaintiffs filed an Answer and Brief in Opposition on August 12, 2016.

1

Plaintiffs' Third Amended Complaint alleges multiple causes of action emanating from the employment relationship between Defendant Ronald Nipple and Plaintiff Custom Building Systems, LLC ["CBS"]. Incident to Ronald Nipple's employment with CBS[1], he executed a confidentiality and non-solicitation agreement ["Exhibit A"] in which he agreed, *inter alia*, to: a) refrain from disclosing or using confidential or proprietary information and trade secrets; b) refrain from hiring or soliciting employees of CBS and the related business entities listed in the caption; c) refrain from selling or attempting to sell modular housing to any builder or customer of CBS and the related entities for a period of three years; and d) refrain from selling, licensing or leasing software related to the production of manufactured structures.[2]

The Third Amended Complaint alleges that in March 2010 Plaintiffs learned that Nipple along with the other named Defendants engaged in conduct which violated the Agreement. Plaintiffs have averred causes of action sounding in breach of contract [Counts I through IV]; tortious interference with existing contractual and business relationships [Counts XIV through XVI]; tortious interference with prospective contractual and business relationships [Counts XVII through XIX]; and civil conspiracy [Counts XX through XXIII]. Plaintiffs withdrew Counts V, VI, VII, VIII, and Count IX by stipulation. By Order of September 14, 2012, the Court dismissed Plaintiffs' counts for Unfair Competition [Counts X-XIII].

Defendants have filed a motion for Summary Judgment. "After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of material fact as to a necessary element of the cause of action..." 42 Pa.R.C.P. No.1035.2. "...[W]here

---

[1] The Third Amended Complaint alleges that CBS employed Ronald Nipple from August 1, 2005 until April 20, 2007.
[2] The related business entities listed in the caption as Plaintiffs include Practical Software Solutions, Inc., [PSS]; Professional Building Systems, Inc., [PBS] and American Modular Transport, LLC [AMT].

2

*102C*

there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered." *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 971 (Pa.Super.20111).

> The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035, 42 Pa.C.S.A.; *Hatter v. Landsberg, supra,* 386 Pa.Superior Ct. at 440, 563 A.2d at 147-48 (1989). *See Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment).

**O'Neill v. Checker Motors Corp.**, 389 Pa. Super. 430, 434-435 (Pa. Super. Ct. 1989)

## I. STATUTE OF LIMITATIONS

Defendants raise the Statute of Limitations as the first ground for summary judgment. Defendants ask for Summary Judgment on tort claims in Counts XIV- XXII asserting a two-year statute of limitations on such claims. Defendants argue that all claims for tortious interference arising prior to April 19, 2009 are barred. Plaintiffs filed the writ of summons on April 19, 2011. Additionally, Defendants assert that all tort claims arising after April 19, 2010 are barred. Defendants assert April 19, 2010 is the date on which the three-year non-solicitation restriction on Mr. Nipple expired.

Additionally, the Defendants seek summary judgment as to Counts XX and XXII for civil conspiracy. Defendants assert the statute of limitations for this cause of action is the same as the underlying torts discussed above. Plaintiffs argue that the two-year limitation began to run upon the Plaintiffs' discovery of injury in March of 2010. Plaintiffs argue that they had until March of

3

*102D*

2012 to make a claim and that there is no time limitation as to the entire three-year period contained in Mr. Nipple's non-solicitation agreement. Plaintiffs cite "As a general rule the start of the statutory limitation on an action in tort may be delayed by plaintiff's ignorance of his injury and its cause, until such time as he could or should have discovered it by the exercise of reasonable diligence." **Bickell v. Stein**, 435 A.2d 610, 612 (Pa. Super) 1981. The Court will not address the issue of statute of limitation as the Court will grant the Motion for Summary Judgment on other grounds.

## II. BREACH OF CONTRACT

Defendants assert the court should grant Summary Judgment as to Counts I-IV, the Claim of CBS in breach of contract. The Contract between CBS and Mr. Nipple prohibited Mr. Nipple with the following language:

> "During the term of this Agreement and for a period of three years from the date of termination of this Agreement, the Employee shall not, directly or indirectly, sell or attempt to sell any modular structure to any builder, or other person or entity, to whom any of the Companies sold modular structure at any time during the twelve months prior to the Employee's cessation of employment hereunder".

A further clause at issue reads:

> "During the term of this Agreement and for a period of three years from the date of termination of this Agreement, the Employee shall not directly or indirectly, solicit, hire, or aid any person or entity to solicit and/or hire, any employee of any of the Companies employed at the time of cessation of the Employee's employment hereunder or employed by any of the Companies at any time during the twelve months prior thereto, or encourage any such employee to leave such employment. The above notwithstanding, beginning one month after the termination of the Agreement, Employee may hire one (but no more than one) employee of Custom in any calendar month."

Both sections fall under the heading "Non-Solicitation Covenants". Defendants argue that the Employment Contract between Mr. Nipple and CBS is invalid as a matter of law, or, in the alternative, that "there are no credible facts of record that Mr. Nipple was involved in any way in

4

*102E*

directly soliciting any of CBS' builders or employees nor did he assist others in soliciting any of them,". Defendant's Brief, page 11. Both parties agree that Pennsylvania law disfavors restrictive covenants and that they must be narrowly construed.

Defendants argue there was no restriction on Mr. Nipple from starting or working for a competitor. Defendants argue the only bar on Mr. Nipple was from sales to the Plaintiffs' customers and solicitation of certain employees for a period of three years. Plaintiffs acknowledge the restrictive covenant was not intended to restrict Mr. Nipple from being able to continue the career that he had developed for forty years. Plaintiffs' Brief in Opposition, page 5. Plaintiffs assert Mr. Nipple was free to compete with Plaintiffs and start a modular structure business. Id. Mr. Nipple's only restriction was the sale directly or indirectly to Plaintiffs customers/builders for a period of three years. Id.

> In order to be enforceable, a covenant not to compete must be: (1) ancillary to the main purpose of a lawful transaction; (2) necessary to protect a party's legitimate interest; (3) supported by consideration; and (4) appropriately limited as to time and territory.
>
> **Volunteer Firemen's Ins. Servs. v. Cigna Prop. & Cas. Ins. Agency**, 693 A.2d 1330, 1337 (Pa. Super. Ct. 1997).

The Court finds the contract at issue was ancillary to the main purpose of a lawful transaction, necessary to protect the Plaintiffs' legitimate interest, supported by consideration and appropriately limited. Prohibiting Mr. Nipple from sales, directly or indirectly, to Plaintiffs' customer list is a legitimate and protectable interest. The covenant is narrowly- tailored to only apply to Plaintiffs' customers during the twelve months prior to Mr. Nipple's cessation of employment and to sales directly or indirectly by Mr. Nipple. The time limit of three years appears appropriate. Plaintiffs appropriately point out that Mr. Nipple was free to work in his field and even directly complete with Plaintiffs. Mr. Nipple's restrictions were limited to sales

5

102F

directly or indirectly to Plaintiffs' customers. The term "indirect" does not make the covenant not to compete non-enforceable as excessively broad. Contrary to Defendants' arguments, the Court does not find that the letter of April 20, 2007, which purports to terminate the "existing agreement", declared the contract in its entirety a nullity.

The Court agrees with Defendants that there are no facts of record that Mr. Nipple was involved in any way in directly or indirectly in sales to any of CBS' builders nor did he assist in soliciting prohibited employees. It is not in dispute that Defendant, Icon Legacy, made sales to the prohibited customers or that certain former employees of Plaintiffs joined Icon Legacy. Plaintiffs assert Mr. Nipple exercised *de facto* control over the operations of Icon Legacy and Icon Legacy Transport. See Plaintiffs' Brief in Opposition, Page, 3. Plaintiff acknowledge Mr. Nipple has extensive experience in the production and operations in the manufacturing home industry. See Answer of Plaintiffs to Defendants' Motion for Summary Judgment, paragraph 18. Plaintiffs allege the contract did not prohibit Mr. Nipple from continuing to work in the industry but Mr. Nipple violated the contract, indirectly through Icon Legacy's sales to prohibited customers. To apply the terms of the contract in the way Plaintiffs assert would logically prohibit Mr. Nipple from continuing in his career in any capacity, not just as it relates to sales. Any potential employer of Mr. Nipple would be precluded from sales to the prohibited customers simply by hiring Mr. Nipple regardless of his involvement with sales. This far exceeds the contract's limitations as written. There are no facts of record that support a finding that Mr. Nipple made sales directly or indirectly to any customers much less the customers prohibited by his contract. Defendants have asserted that Mr. Nipple's involvement in Icon Legacy was not related to sales. Plaintiffs have not offered any evidence, beyond allegations, that Mr. Nipple was involved directly or indirectly in sales. In its brief, Plaintiffs cite to the deposition of Mr. French

6

102G

in support of these contentions. Mr. French created Plaintiff, PBS and is the sole member of Plaintiff, CBS. Additionally, Plaintiffs rely on the deposition of Joseph Maiolo. A review of these depositions and the entire record does not lead the Court to find any facts to support Plaintiffs' position. "Bold unsupported assertion of conclusory accusations cannot create genuine issues of material fact", **Brecher v. Cutler**, 578 A.2d 481, 483 (Pa. Super. 1990). Mr. French's accusations alone do not create facts on which any reasonable inferences in favor of the Plaintiffs can be made. Neither the fact that Mr. Nipple had an office at Icon Legacy nor that his family worked in the business support the assertions made by Plaintiffs. Plaintiffs' argument rests on the fact that because Mr. Nipple's family, along with other owners, created Icon Legacy, and Icon Legacy made sales to prohibited customers, Mr. Nipple must be violating his contract. Pursuant to the terms of the contract, Mr. Nipple was able to seek employment with a direct competitor of Plaintiffs in the same industry and in the same geographic area. Pursuant to the contract, Mr. Nipple was able to create a direct competitor of Plaintiffs in the same industry and in the same geographic area. There is no prohibition against Mr. Nipple financing a similar entity, nor did the contract prohibit Mr. Nipple from working with his family members. Mr. Nipple was simply prohibited from sales directly or indirectly to certain customers of the Plaintiffs and further prohibited from seeking to employ certain of Plaintiffs' employees. Mr. Nipple provided general advice to Icon Legacy during its creation and operation. Plaintiffs have offered no evidence his involvement exceeded the facts plead by the Defendants. None of the employees of Icon Legacy nor the entity itself were prohibited in anyway by the contract between Mr. Nipple and his former employer. Mr. Nipple was not allowed to directly sell to customers or to indirectly sell to customers, for instance, but not limited to, by steering the employees responsible for sales towards certain customers. The court must reiterate the language

7

/02H

of the contract was not a limitation on competition in general but a limitation on Mr. Nipple's sales directly or indirectly to customers. Sales by a separate entity to the prohibited customers were not prohibited, merely the involvement directly or indirectly of Mr. Nipple in those sales was prohibited. Plaintiffs have not produced a single piece of evidence of record to support their accusations. Plaintiffs argue the facts would allow an inference that Mr. Nipple was indirectly selling to the prohibited customers, however this inference is not reasonable on the basis of the record. Not one customer or employee has offered testimony regarding Mr. Nipple's sales to customers on behalf of Icon Legacy or his indirect sale through directing his employees or any other method. There is no documentary evidence of record to support a breach of contract. The Court, therefore, grants Defendants' Motion for Summary Judgement as to Counts I-IV.

Defendants assert Summary Judgment as to Counts II-IV, the Claim of PBS, PSS and AMT in breach of contract. Defendants argue there are no facts to support the claims set forth in these Counts. The Court agrees. There are no facts of record that Mr. Nipple has violated the contract, therefore the claims of PBS, PSS and AMT fail. PBS, PSS, and AMT are all named specifically in the contract between CBS and Mr. Nipple. The record does not support a finding that Mr. Nipple has breached the contract with CBS. The Court grants, Defendants' Motion for Summary Judgement as to Counts II-IV the claims of PBS, PSS and AMT is denied.

### III. TORTIOUS INTERFERENCE

Defendants ask for summary judgment as to Counts XIV, XV, XVI, XVII, XVIII, and XIX for tortious interference with existing or prospective contractual relations. A claim of tortious interference requires the following elements:

(1) the existence of a contractual relationship between the complainant and a third party;
(2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;

8

*102I*

(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual damage as a result of defendant's conduct.

**Walnut St. Assocs. v. Brokerage Concepts, Inc.,** 2009 PA Super 191, P8 (Pa. Super. Ct. 2009)

As to existing contractual relationship, Plaintiffs point to facts in the record which purport to demonstrate existing contractual relationships in describing the relationships as long-standing contractual relationships. Additionally, Plaintiffs assert several orders taken by Defendants were already priced by the Plaintiffs. There are no facts of record that any contractual relationship existed between the Plaintiffs and their potential builders. Further there are no facts of record that the Defendants intended to harm the Plaintiffs. Summary judgment is granted as to tortious interference with existing contractual relations.

As to prospective contractual relationships, the same elements apply with the substitution of prospective instead of existing. **Thompson Coal Co. v. Pike Coal. Co.,** 412 A.2d 466, 471 (1979). Pennsylvania law permits an intentional interference action based on both existing and **prospective** contractual relationships. Glenn v. Point Park College, 441 Pa. 474, 477-78, 272 A.2d 895, 897 (1971). A prospective contractual relation is "something less than a contractual right, something more than a mere hope," although the term admittedly "has an evasive quality, eluding precise definition." **Thompson Coal Co. v. Pike Coal Co.,** 488 Pa. 198, 209, 412 A.2d 466, 471 (1979). Although a prospective contractual relation is not based on a certain contractual right, it must be grounded in the *reasonable likelihood or probability* of an enforceable contractual relationship. **See Glenn,** 441 Pa. at 480, 272 A.2d at 898-99 (emphasis added). The Plaintiffs assertion of a prospective contractual relationship also fails. Mr. French, in his deposition, describes CBS's relationship with its customers but that description does not meet the

9

102 J

standard outlined above. CBS providing a quote in the normal course of business does not lead to the reasonable likelihood or probability of an enforceable contractual relationship. The Plaintiffs provide builders with a price quote of a project. The builders are free to seek out multiple quotes and choose which ever quotes best fits their needs. The act of providing a quote alone to a potential builder does not create a prospective contract. The fact that certain jobs were priced by the Plaintiffs and the Defendants support a potential contractual relationship for either entity, but not a prospective relationship. Further there are no facts of record that support the claim that the Defendants intended to harm Plaintiffs. For the reasons outlined above summary judgment is appropriate. Defendants Motion for Summary Judgment as to Counts XIV, XV, XVI, XVII, XVIII, and XIX is granted.

## IV. CONSPIRACY

Defendants seek summary judgment as to Counts XX though XXII raising civil conspiracy. The underlying tort alleged by the Plaintiffs is that of tortious interference.

> The essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage.
>
> "It has long been the settled rule in this Commonwealth that proof of conspiracy must be made by full, clear and satisfactory evidence. The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy."
>
> In addition, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."
>
> **Phillips v. Selig**, 2008 PA Super 244, 46-47 (Pa. Super. Ct. 2008)(internal citations omitted)

10

102K

Plaintiffs allege Defendants worked together "to hide Mr. Nipple's involvement in Icon Legacy and his indirect sales to certain customers". Plaintiffs allege Mr. Nipple acted maliciously and purposely violated his restrictive covenant. Plaintiffs say Defendants' overt action was the selling of modular structures to the customers, and that actual damage occurred to the Plaintiff due to the loss in customers. There is no evidence of record that the Defendants acted "to do an unlawful act or to do a lawful act by unlawful means of for an unlawful purpose". Mr. Nipple was not barred from competing in the same field as the Plaintiffs. Defendants were not obligated to disclose to Plaintiffs Mr. Nipple's lawful involvement in the business venture. Mr. Nipple's only prohibition was the sales directly or indirectly of Plaintiffs' customers and solicitation of employees. Plaintiffs have offered no evidence of record that Mr. Nipple has done either of these things. Plaintiffs have established that Defendants were competitors in the same industry in roughly the same geographic area. Plaintiffs have not offered any facts of record that support the claim that Mr. Nipple violated the terms of his employment agreement.

## V. DAMAGES

Finally, the Defendants seek summary judgment as to the damages claimed by the Plaintiffs. The parties jointly retained the accounting firm Reinsel, Kuntz, Lesher LLP to review the sales of both parties from April 20, 2007 through April 19, 2010, the period of Mr. Nipple's restriction pursuant to the employment contract. Additionally, the accounting firm reviewed the year prior to Mr. Nipple's termination. Defendants assert, pursuant to the accounting firm's report, the vast bulk of Plaintiffs' damage claim relates to the sales of PBS, not CBS (Mr. Nipple's former employer). Defendants claim Mr. Nipple never worked for PBS nor were the company's customers ever disclosed to him. Plaintiffs have argued that PBS was an "intended

11

*102L*

beneficiary" of the restrictions in Mr. Nipple's contract that Mr. Nipple has violated the terms and that damage has been caused to PBS in the form of lost sales. Plaintiffs have specifically identified which lost sales it attributes to Mr. Nipple's wrongful actions. The Court has previously ruled that the breach on contract claims, conspiracy claims and tortious interference claims are without merit, therefore summary judgement is also granted in favor of Defendant as to damages.

Defendants further assert that Plaintiffs' damages claims fail because Plaintiffs fail to offer evidence that if Icon had not made the sales, the sales would have gone to Plaintiffs. Plaintiffs counter these arguments with the assertion that the "determination of damages is a factual question to be decided by the fact-finder". Plaintiffs have estimated their damages on the basis of the parties' joint accounting firm's findings and the spreadsheet attached as Plaintiffs' Answer to Defendants' Motion for Summary Judgment, Exhibit "D". Exhibit "D" outlines how Plaintiff arrived at the value of the alleged damages.

> "The general rule in this Commonwealth is that the plaintiff bears the burden of proof as to damages.
>
> The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses.
>
> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof."
>
> Omicron Sys. v. Weiner, 2004 PA Super 389, P36 (Pa. Super. Ct. 2004)

12

*102M*

Without further evidence, the damages outlined by Plaintiffs to do not demonstrate probable, inferential, or direct proof of Plaintiffs' loss. The damages claim also fails on this basis.

BY THE COURT:

MICHAEL HUDOCK, P.J.

c:  Walter A. Tilley, III, Esquire
Alan R. Boynton, Jr., Esquire
Debra P. Fourlas, Esquire
Plaintiffs
Defendants
Jenna Neidig, Esquire, Law Clerk
The Honorable Louise O. Knight, S.J.

e-copy: The Honorable Michael H. Sholley, J.

13