**PROFIT WIZE MARKETING, T/A Executrain of Allentown & Harrisburg, Appellee,**

v.

**Michael WIEST, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 2002.

Filed Dec. 4, 2002.

Gary L. Mason, Manalapan, N.J., and Sara A. Austin, York, for appellant.

Jack M. Seitz, Allentown, for appellee.

BEFORE: HUDOCK, JOYCE and TAMILIA, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, Michael Wiest, appeals from the November 30, 2001 order of the Court of Common Pleas of Lehigh County directing him to pay $14,979.63 in attorney fees and costs to Appellee, Profit Wize Marketing t/a Executrain of Allentown & Harrisburg ("Executrain"). Upon review, we reverse. The relevant facts and procedural history are as follows.

¶ 2 On February 1, 2000, Appellant, a sales representative, entered into an employment contract with Executrain, a company providing computer-training services to customers throughout Pennsylvania. This contract not only outlined the terms of Appellant's employment with Executrain, but also contained standard noncompete and confidentiality covenants in the event that Appellant's employment would terminate. The contract further

provided that, in the event of litigation between the parties,

> Employee recognizes and agrees that the ascertainment of damages in the event of Employee's breach or violation of any covenant or undertaking contained in this Agreement would be difficult, if not impossible, and further that the various rights and duties created hereunder are extraordinary and unique so that the Employer will suffer irreparable injury that cannot adequately be compensated by monetary damages in the event of Employee's breach or violation of any covenant or undertaking contained in this Agreement. Employee, therefore, agrees that the Employer, in addition to and without limiting any other remedy or right it may have, shall have the immediate right to obtain a preliminary or final injunction against Employee.... **Employee further agrees that if Employer prevails in any suit or action under this Agreement, Employee shall reimburse Employer for its expenses incurred in connection with such suit or action, including without limitation, its attorney's fees and costs.**

Executrain of Allentown and Harrisburg [Employment] Agreement, Section 14, Certified Record, at 2 (emphasis added).

¶ 3 On March 21, 2001, Appellant resigned from Executrain and found employment less than two weeks later with one of Executrain's competitors, New Horizons, Inc. While in his new position, Appellant allegedly solicited a number of Executrain's customers and utilized confidential information in violation of his Agreement with Executrain. Upon learning of this conduct, Executrain sought a preliminary injunction against Appellant to enforce the restrictive covenants in the Agreement. Specifically, Executrain wished to enjoin Appellant from (1) working for New Hori-

zons in Executrain's marketing area for a period of two years, (2) divulging or using Executrain's customer information, and (3) soliciting, obtaining or attempting to obtain any of Executrain's customers or prospective customers. Complaint, Certified Record at 1. Executrain also requested that the court order Appellant to pay compensatory damages, costs and attorney fees in excess of $50,000.00. *Id.*

¶ 4 The court, sitting in equity, held a hearing on Appellant's motion for a preliminary injunction on July 3, 2001. During the course of this hearing, however, the parties informed the court that they had reached a settlement and would stipulate to the entry of a permanent injunction. Stipulation for the Entry of a Permanent Injunction, Certified Record, at 21. Pursuant to this stipulation, the parties agreed that Appellant would not communicate or solicit sixty-five of Executrain's customers for a period of one year. *Id.* As a condition of this settlement, Executrain agreed to waive its claims for damages and losses with the exception of its claim for attorney fees and costs. *Id.* The parties agreed to submit this remaining claim to the court for its consideration. *Id.*

¶ 5 The court held a hearing on Executrain's request for counsel fees and costs on November 28, 2001. At this hearing, Executrain's counsel submitted its invoices for legal fees and costs. The parties stipulated that the hourly-rate charged by Executrain's counsel was reasonable and that the invoices properly demonstrated the amount of time spent on the claim. Additionally, the parties agreed that the court must determine (1) whether the amount of time spent was reasonable for the service rendered and (2) whether Executrain had "prevailed" in the underlying action thereby entitling it to an award of costs and attorney fees under Section 14 of the Employment Agreement.

¶ 6 On November 30, 2001, the court issued an order granting Executrain's request for attorney fees and costs in the amount of $14,979.63. In its order, the court provided the following explanation for its award: "since [Executrain] has only partially prevailed in obtaining the relief requested, I have not awarded the full amount of attorney fees claimed. I believe this is a fair resolution of the petition for counsel fees, and one that is consistent with the intention of the parties in Section 14 of the Employment Agreement." Certified Record, at 28.

¶ 7 Appellant filed a timely notice of appeal from this order on December 26, 2001. On this same date, the court issued an order, which directed Appellant to file a "Statement of Matters Complained Of" within fourteen days of the order. After Appellant failed to comply with this order, the court issued a 1925(a) opinion declaring that Appellant has waived all of his issues on appeal. Thereafter, on March 5, 2002, Appellant filed a petition requesting permission to file a 1925(b) statement *nunc pro tunc.* On March 18, 2002, the court granted this petition and directed that Appellant file the statement within fourteen days. Appellant filed his statement on April 1, 2002, and the court issued a 1925(a) opinion addressing each of the issues on May 1, 2002.[1]

¶ 8 In his brief, Appellant purportedly raises ten issues for our review:

1. Whether the trial court erred in granting [Appellee's] motion for an award of counsel fees and costs.

2. Whether the trial court abused its discretion in concluding that [Appellee] had "prevailed" on its claims and, therefore, in accordance with the parties' agreement, was entitled to an award of counsel fees and costs.

3. Whether [Appellee] has, in fact, "prevailed" on its claims, as contemplated by the parties and as set forth in the parties' agreement and, therefore, is entitled to an award of counsel fees and costs.

4. Whether statutes that have interpreted the meaning of "prevailing party" in the context of specific causes of action, such as federal and state court discrimination statutes, are applicable to the instant matter.

5. Whether the trial court, by relying on other courts' interpretation of the phrase "prevailing party," as it applies to very specific statutory causes of action, speculated as to the parties' intent when that intent was not clearly and unambiguously set forth in the Agreement.

6. Whether the trial court construed the Agreement only as written or, rather, modified the plain meaning of the words under the guise of interpretation.

7. Whether, in a non-statutory, breach of contract action, where the parties have executed a fully integrated contract, and have not set forth a definition for the word "prevail," in the wake of a settlement, can either party be construed as the "prevailing party."

8. Whether, in order to conclude that the term "prevail" was to be construed

---

1. After acquainting ourselves with the procedural history of this case, we question the propriety of the lower court's March 18, 2002 order granting Appellant's request to file a 1925(b) statement *nunc pro tunc.* Upon our review of existing case law and the Pennsylvania Rules of Appellate Procedure, we do not

find any authority explicitly permitting such a practice. Nevertheless, since Executrain did not oppose Appellant's request and as meaningful appellate review is not precluded in this case, we will examine this issue another day.

analogously to the way it is interpreted in certain statutes, such as state and federal discrimination statutes, the trial court was required to speculate as to the parties' intent, since that intent was not clearly set forth in the Agreement.

9. Whether, absent any such expression of intent, the trial court had the authority to insert its own interpretation of the phrase "prevailing party."

10. Whether [Appellee's] motion should have been denied because [Appellee] failed to meet its burden in demonstrating the parties' agreed-upon meaning of the term "prevail."

Appellant's Brief, at 4–5. Our review of these issues assures us that Appellant has essentially raised one issue for our review: whether the Court erred in its interpretation of Section 14 of the Employment Agreement when it determined that Executrain "prevailed" in the underlying action.

 ¶ 9 While addressing this issue, we are mindful that the interpretation of a contract is a question of law. *Flanagan v. Fidelity Bank*, 438 Pa.Super. 516, 652 A.2d 930, 932 (1995). Therefore, our standard of review is plenary. *Id.*[2]

 ¶ 10 When interpreting the language of a contract, the intention of the parties is a paramount consideration. *Thomas Rigging & Constr. Co., Inc. v. Contraves, Inc.*, 798 A.2d 753, 755 (Pa.Super.2002). "In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly." *Meeting House Lane, Ltd. v. Melso*, 427 Pa.Super. 118, 628 A.2d 854, 857 (1993), *appeal denied*, 537 Pa. 633, 642 A.2d 486 (1994) (citations omitted).

 ¶ 11 When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. *Osial v. Cook*, 803 A.2d 209, 213 (Pa.Super.2002). The language of a contract is unambiguous if we can determine its meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Baney v. Eoute*, 784 A.2d 132, 136 (Pa.Super.2001). "When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." *Cordero v. Potomac Ins. Co. of Illinois*, 794 A.2d 897, 900 (Pa.Super.2002). As the parties have the right to make their own contract, we will not modify the plain

2. Both parties assert that this Court should review the court's decision to award attorney fees and costs under an abuse of discretion standard. Appellant's Brief, at 3; Appellee's Brief, at 10. We disagree. Although the parties cited a number of cases in support of this proposition, each are distinguishable in that, in those cases, the trial court was given discretion by statute to determine whether an award of attorney fees and costs was appropriate. *See Verholek v. Verholek*, 741 A.2d 792, 795, 799 (Pa.Super.1999) (pursuant to 42 Pa.C.S.A. § 2503(7), "a party to an action *may* be awarded counsel fees when another party engages in dilatory, obdurate, or vexatious conduct during the pendency of a matter"); *Hess v. Gebhard & Co.*, 769 A.2d 1186, 1195–96 (Pa.Super.2001), *appeal granted*, 566 Pa. 683, 784 A.2d 118 (2001) (same); *Kulp v. Hrivnak*, 765 A.2d 796, 799 (Pa.Super.2000) (same); *Hoy v. Angelone*, 554 Pa. 134, 147, 720 A.2d 745, 752 (1998) (pursuant to 43 P.S. § 962(c)(2), the trial court *may* award attorney fees and costs to the prevailing plaintiff if the court determines that the defendant engaged in unlawful discriminatory practices). In the instant case, however, an award of attorney fees and costs was not subject to the trial court's discretion. Rather, Appellant agreed that he would bear these expenses if Executrain prevailed against him in a suit or action under the Agreement. As such, whether Executrain is eligible for these fees, as a prevailing party, is a question of law.

meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used. *Meeting House Lane, Ltd.*, 628 A.2d at 857.

¶ 12 On the contrary, the terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense. *Cordero*, 794 A.2d at 900. Additionally, we will determine that the language is ambiguous if the language is "obscure in meaning through indefiniteness of expression or has a double meaning." *Baney*, 784 A.2d at 136. Where the language of the contract is ambiguous, the provision is to be construed against the drafter. *Cordero*, 794 A.2d at 900.

¶ 13 In the instant case, Appellant agreed to reimburse Executrain for its attorney fees and costs in the event Executrain "prevails in any suit or action" under the employment agreement. Employment Agreement, Section 14. As the parties failed to define the term "prevails" in the contract itself, we must look to the plain and ordinary meaning of "prevail" to discern the contractual intent of the parties. *See Osial, supra; Cordero, supra.* In common parlance, to "prevail" means "to gain ascendancy through strength or superiority: TRIUMPH." Merriam Webster's Collegiate Dictionary, 7th Ed. at 924. Additionally, Black's Law Dictionary has defined the verb, prevail, as "to obtain the relief sought in an action; to win a lawsuit <the plaintiff prevailed in the Supreme Court>." Black's Law Dictionary, 7th ed. at 1206.

¶ 14 In light of these definitions, we do not find that Executrain is entitled to a reimbursement of its attorney fees and costs as it did not "prevail" or "win" in the underlying action. Although a hearing commenced on the underlying issues, the lower court never reached the merits of the case or vindicated Executrain's position. Rather, after extensive discussions, the parties managed to settle their differences and to negotiate an end to the litigation.

¶ 15 By entering into a stipulation for the entry of a permanent injunction, both Executrain and Appellant managed to preserve certain legal rights and willingly relinquished others. For example, Executrain successfully managed to restrict Appellant's ability to solicit and contact some of its clients for a period of one year. Notwithstanding this result, Appellant retained his ability to contact some of Executrain's clients, reduced the length of the injunction from two years to one year and prevented Executrain from seeking further legal remedies. Such a resolution, in keeping with the nature of most settlement agreements, evidences a compromise. Neither party in this case emerges as the clear-cut winner. As the plain and unambiguous meaning of "prevail" requires Executrain to "triumph" or "win" in the underlying action, we do not find that Executrain is entitled to an award of attorney fees and costs.[3]

¶ 16 Consistent with this interpretation, we note that the noun, "prevailing party," is commonly defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Id.* at 1145. While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the

---

**3.** Additionally, we are not willing, nor are we permitted, to fashion an equitable remedy in the instant case because Executrain "partially prevailed." Although the lower court attempted to craft such a remedy, the language of the contract does not so provide.

fact finder declares a winner and the court enters judgment in that party's favor. Such a pronouncement does not accompany a compromise or settlement.

¶ 17 Notwithstanding, Executrain contends that such an interpretation would deter any party, who must "prevail" to obtain attorney fees and costs, from ever settling a case. We disagree. Foremost, one could certainly argue, in the alternative, that an interpretation which allows for any settlement to constitute a victory for a plaintiff would deter the defendant from settling the case. For example, a defendant, in a close case on the merits, may prefer to risk a trial in order to avoid the impending imposition of attorney fees and costs. Second, nothing in this memorandum precludes the parties from explicitly providing in the contract whether a party might "prevail" in the event of a settlement or from establishing criteria to determine who the "prevailing party" is when a settlement occurs. Third, we do not find that such an interpretation dissuades settlement because the parties could simply incorporate the allocation of attorney fees and costs into their settlement agreement.

¶ 18 Finally, we are not persuaded by Executrain's assertion that we must interpret the language of the instant contract in view of several federal statutes which authorize an award of attorney fees and costs to a "prevailing party." Appellee cites a number of federal cases which have interpreted the "prevailing party" statutory language to include those parties who obtained relief through a settlement. *See Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir.2002) (plaintiff constitutes a "prevailing party" entitled to attorney fees and costs under

the Americans With Disabilities Act, 42 U.S.C.A. § 12205, where settlement is reached between the parties); *Disabled in Action of Pennsylvania v. Pierce*, 789 F.2d 1016 (3rd Cir.1986) (plaintiff is a "prevailing party" that is entitled to an award of expenses under the Civil Rights Attorney's Fee Awards Act, 42 U.S.C.A. § 1988, where it obtained a significant amount of relief through a settlement); *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (an individual who obtains significant relief in a settlement under der the Civil Rights Attorney's Fee Awards Act may constitute a "prevailing party"). While we recognize that our federal courts have interpreted this statutory language in a broader fashion than we have interpreted the contractual language in the instant case, our federal courts have done so in light of a different consideration. Such a broad interpretation operates to ensure equal access to the justice system for those seeking to assert a claim under federal civil rights laws or anti-discrimination laws. *See, e.g., Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir.1980) (language of the Civil Rights Attorney's Fee Awards Act must be broadly construed to encourage compliance with and enforcement of civil rights laws). Such a consideration is not applicable in the instant case.

¶ 19 Additionally, there is no evidence of record that the parties intended to assign the same meaning to the term "prevail" in the instant employment contract as is given in the civil rights or anti-discrimination context. Absent any evidence of such contractual intent, we must construe the language of the contract in accordance with the plain and ordinary meaning of the term "prevail."[4] Having determined that

---

**4.** In this same vein, we reject Executrain's contention that portions of the Pennsylvania Administrative Agency Act control our interpretation of the language in the parties' employment contract. *See* 71 P.S. § 2032 (defining a "prevailing party" for purposes of

Executrain did not prevail in the underlying action, we reverse the order of the lower court awarding attorney fees and costs to Executrain.

¶ 20 Order reversed. Jurisdiction relinquished.

awarding attorney fees as "a party in whose favor an adjudication is rendered on the merits of the case ... or who obtains a favorable settlement approved by the Commonwealth Agency initiating the case.") While the General Assembly is free to define "prevailing party" in any fashion it chooses, its definition does not control in a contract dispute. This Court is constrained to interpret the language of this private contract in accordance with the plain and ordinary meaning of the Agreement's terms.