J-A14009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| OPULENT WATCHES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREME WARNER | : | |
| | : | |
| Appellant | : | No. 2046 EDA 2023 |

Appeal from the Judgment Dated August 9, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 201200676

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED AUGUST 20, 2024**

Jereme Warner appeals from the judgment[1] entered in the Court of

Common Pleas of Philadelphia County on the verdict and attorney's fees

---

[1] Warner filed his notice of appeal on July 31, 2023, well before the trial court ruled on his post-trial motion or entered final judgment on the verdict. Nevertheless, Pa.R.A.P. 905(a)(5) provides that "[a] notice of appeal filed after the announcement of a determination[,] but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5). Consequently, we consider Warner's notice of appeal to be filed on August 9, 2023, the day that judgment was entered against him.

Additionally, as we discuss *infra*, "Opulent Watches LLC" is the incorrect name for the appellee. The trial court, at the time of trial, granted an oral motion to correct the trial court docket to reflect appellee's correct name, "Opulent Watches, Inc." *See* N.T. Trial, 6/28/23, at 146-48 (trial court allowing name change pursuant to Pa.R.Civ.P. 1033(a) and (b)). However, this change was not formalized until July 25, 2023, when the trial court filed an order directing the docket be changed. *See* Order, 7/25/23. The trial court's written order occurred after this Court had already docketed Warner's notice of appeal.

*(Footnote Continued Next Page)*

imposed against him in the amount of $50,895.00. After careful review, we affirm.

The trial court summarized the factual history of this case as follows:

[Jonathan Yedwabnik] started Opulent Watches, Inc.[,] in the early 2000's and operated [it] as an online boutique retailer specializing in authentic new and pre-owned luxury jewelry and watches by brands such as Cartier, Chanel, Van Cleef, and Audemars Piguet. [Yedwabnik] regularly dealt in merchandise valued in excess of $100,000[.00]. In 2008, [Yedwabnik] began selling on eBay and maintained a 100% positive feedback rating. Yedwabnik testified[, at trial,] that he had been in the high-end jewelry business for a long time and had extensive knowledge and experience in determining whether a piece of jewelry was authentic. He further testified that if he ever had any doubt as to a piece's authenticity, his practice would be to take it directly to the manufacturer and receive documentation from them. Yedwabnik [testified that his] business was built entirely on trust and that selling a fake watch or piece of jewelry would damage his reputation and destroy his business.

Yedwabnik testified that he typically obtained his inventory directly from manufacturers or from trade shows and dealers, and that each item was authenticated before it was listed on his company website. He stated that he had security measures in place for doing business online, including sending purchased items only to the billing address attached to the credit card, recording the packaging of every shipment via an overhead 4k high resolution camera, and shipping by way of FedEx overnight with signature confirmation required.

Yedwabnik stated that customers typically contacted him for additional photos or to ask questions regarding availability before purchasing an item from his website. [He] testified that on October 23, 2018, [Warner] purchased[,] from [the Opulent Watches] website[,] an Audemars Piguet rose gold rubber clad

_____

We have corrected the caption to reflect that Warner appeals from the August 9, 2023 judgment, and that appellee's correct name is "Opulent Watches, Inc."

watch with a gray dial, serial number F86262, without contacting [Yedwabnik] first for any additional information. After [Yedwabnik] received notice of the online sale, [Yedwabnik] emailed [Warner, requesting verification that Warner had made the purchase, but Yedwabnik] did not receive a response. [Yedwabnik] emailed [Warner] again, informing him that the transaction would be cancelled if he did not reply. [Warner] finally replied and sent [Yedwabnik] the requested photograph of [Warner] holding his driver's license up to his face. On October 25, 2018, [Yedwabnik] emailed [Warner] and asked if he would be home the next morning to receive the watch via overnight FedEx delivery, signature required. [Warner] replied via email, "I will be available." [Yedwabnik] testified that he packaged the watch with the instruction manual and warranty booklet. The packaging process was recorded by the motion-activated 4k HD camera mounted overhead in his business, and the resulting video showed the watch's serial number, the watch itself, and the accompanying paperwork. [Yedwabnik] stated that the boxes he had on hand were not the correct size for the watch, so he had to walk off camera to retrieve another box. When he returned, the video camera began recording again. [Yedwabnik] stated that the first video was saved as it was submitted to the credit card company after [Warner later-filed a] charge-back and the company requested proof of serial number. [Yedwabnik] explained that the subsequent video, showing him placing the packaged watch into the FedEx box[,] was deleted from the hard drive as part of a routine storage wipe. [Yedwabnik] stated that this portion of the video was not downloaded and saved because the credit card company did not request it and by the time the instant litigation commenced, [the video] had already been deleted.

[Yedwabnik] testified that he received confirmation from FedEx that the watch was delivered to [Warner] before 10:30 a.m. on Friday, October 26, 2018[,] and that the package was signed for by "J. Jereme." Later that same day, [Yedwabnik] received an email from [Warner,] which stated, "I received my shipment from FedEx. But if I recall correctly, the listing on your website said box and papers were included with the watch and I do not have any papers or documentation that came with the watch. Only a watch and a watch box." [Warner] further wrote in his email, "I don't seem to be able to access the listing anymore from your website. And when I click on the invoice or my orders tab, it only states the watch name and the price[, and] that I purchased the

watch, without any details." [Yedwabnik] testified that this was false[,] as he maintained listings for all of his inventory on his website, whether the item was in stock or had been sold, for search engine optimization. [Yedwabnik] stated that [Warner] complained in his email that the watch looked "very different" from [a] watch that he tried on in Las Vegas and that [Warner] intended to fly [to Las Vegas] to have the watch inspected. [Yedwabnik] stated that [Warner] did not attach any photos to his email and that [Yedwabnik] was unaware that [Warner] had tried on any similar watches prior to [the instant] purchase.

[Yedwabnik] testified that he replied to [Warner]'s email and told him the paperwork was beneath the watch box and that this was indeed the rubber clad model. [Warner] quickly replied that he would check the box when he returned home but that he had only seen "the watch box, some plastic bubble wrap, and a book about Audemars['] watch movement. [There was n]o warranty card, invoice, appraisal, or serial registration." On November 5, 2018, [Warner] emailed [Yedwabnik] again, stating[,] "I have returned home, and I took a look at the box. There is just one booklet which doesn't mention anything at all about the registration or warranty or documentation. I have attached the picture for your viewing. If you could try to locate that for me, that would be preferable. Perhaps I can go to Las Vegas boutique and see if they can get me a new copy[] and take a look at it." [Yedwabnik] examined the photo sen[t] by [Warner] and [saw] both booklets [] underneath the watch box as it was flush with the sides, meaning both included booklets were underneath. [Yedwabnik] replied to [Warner]'s email and offered to send a "certificate of appraisal/insurance document" for insurance purposes. [Yedwabnik] also sent photos of the watch box with the two booklets underneath that he had taken prior to shipping the watch. [Warner] responded . . . that he had compared the photos and that he did not believe they matched. [Warner] then asked [Yedwabnik] to contact FedEx to see if there was a "mix-up." [Yedwabnik] became suspicious that [Warner] was "running a scam on us and trying to steal the merchandise."

[Yedwabnik] testified that he emailed [Warner] the appraisal report and a recommended insured value of the watch. [Warner] replied on November 7, 2018, "The [reference] numbers do not add up on your document that was sent to me. Was this done by a gemologist?" [Yedwabnik] replied that all numbers matched and sent [Warner] photos of the back of the watch and the booklet

which both included the serial number F86262. [Warner] responded that he was out of town and had "dropped off the watch at Audemars in Las Vegas for my rep to take a look at it for me, since these numbers from your pictures did not match those of the watch." [Yedwabnik] testified that he did not believe [Warner] had dropped the watch off at an Audemars Piguet store because the representatives at the stores are not "salespeople" but are well-educated as to the history and significance of their watches and their job is to educate clientele, not sell watches. [Yedwabnik] further added that if the watch had been fake, there would have been no need to "drop it off" as the store representative would have known immediately.

[Yedwabnik] testified that [Warner] later sent him photos of the watch he allegedly had examined by the Audemars Piguet representative. [The watch in these photos was not the watch that Yedwabnik had packaged and sent to Warner. Yedwabnik stated that] the watch in the photographs was fake, [because] the "seven and five [were] cut out . . . the watch does not have a gray dial," and it said "quartz" instead of "automatic." In addition, the watch in the photograph had a fictitious serial number.

[Yedwabnik] testified that [Warner] emailed him again, asking him to contact FedEx to see if the package had been tampered with, and stating "I will be in contact once I have the results back from Audemars." [Yedwabnik replied], explaining that the packaging and shipment of the watch had been recorded by video and that if [Warner] had any issues with legitimacy, he should have brought this up immediately upon receipt. [Warner] replied that he had contacted [Yedwabnik] immediately upon receiving the watch and that he believed he had "been very clear on the issues that I have had with my order in my correspondence." [Yedwabnik] then responded as follows:

Hi [Warner], your initial contact was stating that you had only allegedly received one booklet. When we reviewed the video, both of the booklets were placed in a box. You had then requested documentation for insurance, which we had sent over. There is no way FedEx had known the contents of the parcel. Also, the FedEx label attached is a sticker created by us which cannot be altered. If there was any evidence of FedEx tampering with the package, it would have been visible to you when you received the watch. Since that was not stated at the beginning, they will not look

into it. We have all the emails as well. And the watch you [] purchased is the watch you [] received. Furthermore, we took photos of the watch and have all our shipments recorded.

[N.T. Trial, 6/28/23, at] 108-[]14.

[Warner] did not respond to this correspondence. Instead, on January 3, 2019, [Yedwabnik] received [the above-mentioned] "charge-back" from [Warner]'s credit card processing company, in the amount of $29,995[.00], with the reason given as "counterfeit merchandise." [Yedwabnik] disputed this charge-back and [Warner's] credit card company found in [Yedwabnik]'s favor.

On January 4, 2019, [Yedwabnik] instructed his attorney to contact [Warner and] request[] that he return [the] merchandise or pay the amount in full. [Warner] did not respond to the attorney's email. [Yedwabnik] then went to his local police department in Lower Southampton and filed a police report. He also contacted the police in Tempe, Arizona[,] where [Warner] resided, who told him that this was a civil matter.

On February 25, 2019, [Warner] initiated a second charge-back procedure, this time claiming "product not received." This time, the credit card company sided with [Warner] and refunded him $29,995[.00]. [Warner did not return the watch to Yedwabnik.]

* * *

[] Warner [] testified that he purchased a watch from [Opulent Watches'] website on October 23, 2018[,] for approximately $30,000[.00]. He stated that on October 26, 2018, he returned home and there was a FedEx package on his front step. [Warner] stated that the package contained a watch and one "thick booklet." He testified that he had bought luxury watches before, including another Audemars Piguet. [Warner] admitted that[,] during his deposition, he stated originally that he had never bought an Audemars Piguet watch before, but then remembered that he had purchased one for his father. After being shown his own photograph wearing an Audemars Piguet watch, [Warner] then recalled that he had, in fact, purchased an Audemars Piguet watch for his father, but then decided to keep it for himself. [Warner] stated that he did not have any documentation

- 6 -

regarding his prior purchase of an Audemars Piguet watch and that he no longer owned the watch in the photo [because] he had traded it in for a Phillip Patek Nautilus watch.

[Warner] testified that he was not home when the [instant] watch was delivered, even though he had told [Yedwabnik] that he would be available before 10:30 a.m., because he did not believe that being available meant that he actually had to be at home. He stated that he likely was flying a plane that morning because he was trying to get his pilot's license. After being shown his flight logbook, which did not indicate any flight hours on October 26, 2018, [Warner] admitted he was not flying that day[,] but claimed he was not at home. He testified that he did not know why he did not send [Yedwabnik] a photograph of the serial number on the back of the watch and ask why the numbers did not match. [Warner] could not remember if he ever sent [Yedwabnik] a photograph of the watch he received. He further testified that when he saw the word "quartz" on the watch, even though he had expected an automatic watch, he did not think much of it and just assumed this was an older model. [Warner] stated that on or before November 8, 2018, he took the watch to the Audemars Piguet showroom in Las Vegas. He stated that he could not recall what the showroom representatives told him, but believed that they told him to send it to the manufacturer. [Warner] testified that he did remember sending [Yedwabnik] an email informing him that [Warner] planned to issue a charge-back for the price of the watch, but he could not locate this particular email[.] [Warner] then admitted that perhaps the email never got sent. [Warner] denied ever receiving an email from [Yedwabnik]'s attorney requesting that he return the watch.

* * *

[Warner] testified that after he sent the watch to the Audemars Piguet manufacturer, he received an email stating that the watch was counterfeit and that it would be destroyed. [Warner] testified that the watch he received from [Yedwabnik] was counterfeit and denied switching the authentic watch with a fake.

Trial Court Opinion, 11/3/23, at 5-12 (some citations omitted).

On December 14, 2020, Yedwabnik filed a complaint in Philadelphia County against Warner alleging fraud, conversion, and unjust enrichment. On

February 6, 2021, Warner filed preliminary objections, which the trial court[2] denied on March 9, 2021. On March 25, 2021, Warner filed a motion for reconsideration. On March 30, 2021, the trial court granted Warner's motion for reconsideration and dismissed, with prejudice, Yedwabnik's claims of fraud and unjust enrichment.

On April 15, 2021, Warner filed an answer to Yedwabnik's complaint, as well as new matter and counterclaims. Warner alleged breach of contract and violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL). On July 2, 2021, Yedwabnik filed preliminary objections to Warner's counterclaims. On August 17, 2021, the trial court sustained Yedwabnik's preliminary objections and dismissed both of Warner's counterclaims without prejudice.

On September 14, 2021, Warner filed an amended counterclaim against Yedwabnik, alleging a violation of the "catchall provision" of the UTPCPL. On October 14, 2021, the trial court dismissed Warner's amended counterclaim with prejudice and sanctioned Warner $2,000.00 pursuant to 42 Pa.C.S.A. §§ 2503(7) and (9), based on his conduct. *See* Trial Court Opinion, 11/3/23, at 2-3 n.1, n.2 (summarizing procedure and explaining Warner's behavior was found to be vexatious, dilatory, or otherwise in bad faith).

---

[2] We note that this case was heard by several different Court of Common Pleas judges throughout its pendency. We refer to all of them, collectively, as the "trial court."

On October 17, 2021, Warner filed a motion for judgment on the pleadings and, on October 18, 2021, Warner filed a motion for reconsideration of the dismissal of his amended counterclaim. On November 10, 2021, the trial court denied Warner's motion for judgment on the pleadings. On the same day, the trial court entered an order granting-in-part, Warner's motion for reconsideration and withdrew the sanctions.

On November 23, 2021, Warner filed a motion for reconsideration of the order denying his motion for judgment on the pleadings. On December 14, 2021, the trial court denied that motion and awarded Yedwabnik $3,000.00 in attorney's fees. On January 13, 2022, Warner filed a notice of appeal to this Court. On February 1, 2022, Warner filed an emergency motion to stay proceedings pending the outcome of his appeal, which the trial court denied on the same day, "having determined that no emergency basis existed for the relief requested." Order, 2/1/22. On February 15, 2022, Warner filed a motion for extraordinary relief, requesting a 60-day extension to the discovery period due to Warner's work schedule, as well as sanctions against Yedwabnik. On March 7, 2022, the trial court denied Warner's motion for extraordinary relief, but on March 8, 2022, the trial court entered a separate order granting Warner's request to extend discovery by 60 days. On May 5, 2022, this Court quashed Warner's interlocutory appeal.

On June 6, 2022, Warner filed a motion for summary judgment, which argued, *inter alia*, that Opulent Watches LLC was not the name of Opulent Watches, Inc. On July 7, 2022, Yedwabnik filed a response, in which he

indicated that the "LLC" was a typographical error, and that Opulent Watches has always been the same entity from which Warner purchased the Audemars Piguet watch. Additionally, Yedwabnik, in his response, requested to amend the docket to reflect the correct name, Opulent Watches, Inc. On August 16, 2022, Warner filed a motion for extraordinary relief, requesting a trial date certain due to his professional commitments as a pilot. On September 14, 2022, the trial court granted Warner's motion for extraordinary relief, and ruled that Warner could request a trial date certain upon good cause shown.

On November 18, 2022, the trial court denied Warner's motion for summary judgment. Warner filed an amended answer on November 28, 2022. On March 3, 2023, the trial court overruled Warner's preliminary objections, sustained Yedwabnik's preliminary objections, and struck Warner's demand for a jury trial. On April 3, 2023, Warner filed a motion to reconsider, which the trial court denied on April 14, 2023.

Ultimately, the parties proceeded to a non-jury trial on June 28, 2023. During trial, Warner again raised the Rule 1033 issue and argued that Opulent Watches LLC did not exist. Yedwabnik again replied that the "LLC" was a typographical error and made an oral motion to amend the docket name to "Opulent Watches, Inc," which the trial court granted. Following trial, on June 29, 2023, the trial court found Yedwabnik was credible, Warner was not credible, and ruled in favor of Yedwabnik in the amount of $30,895.00 plus reasonable attorneys' fees. Both parties filed submissions regarding the amount of reasonable attorneys' fees. On July 25, 2023, the trial court

determined that reasonable attorneys' fees amounted to $20,000.00. That same day, pursuant to Yedwabnik's oral motion to amend the caption, the trial court ordered that the docket be amended to reflect that the correct name for Opulent Watches is "Opulent Watches, Inc." instead of "Opulent Watches LLC." *See* Order, 7/25/23.

On July 28, 2023, Warner filed a timely post-trial motion,[3] which the trial court denied on August 9, 2023. Warner filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Warner now raises the following issues for our review:

[1.] Did [the] trial court err in sustaining a demurrer on [Warner]'s counterclaim under [the UTPCPL] and iss[ing] sanctions for filing a counterclaim, both rulings set forth on December 14, 2021?

[2.] Did [the] trial court err in refusing to grant [Warner]'s motion for non-suit at trial, when [Opulent Watches] admitted that the entity which brought the case, Opulent Watches LLC[,] does not exist, [and] allow[ed] appellee to change the name and organizational structure from Opulent Watches LLC to Opulent Watches[,] Inc[.,] issuing an order to the effect 26 days after trial?

[3.] Did [the] trial court abuse [its] discretion in overlooking at least two instances of [Opulent Watches] lying about: [] being in

_____

[3] Warner titled his motion as a "Motion to Preserve Issues for Appeal." In his motion, Warner requested the trial court to reconsider its judgment, order a new trial, or order a nonsuit, which are forms of relief only available in motions filed pursuant to Pa.R.Civ.P. 227.1, pertaining to post-trial motions. *See* Pa.R.Civ.P. 227.1(a); *see also Gemini Equipment Co. v. Pennsy Supply, Inc.*, 595 A.2d 1211, 1214 (Pa. Super. 1991) (court has discretion to treat motion for reconsideration as post-trial motion where it is intended to function as such). Accordingly, we conclude that Warner's motion is properly construed as a post-trial motion.

possession of a video which proves [its] case beyond any reasonable doubt and [] having possession and control over [Warner]'s purchase funds of $29,995[.00] in the months of October, November, and December of 2018?

[4.] Did the trial court err as a matter of law in awarding attorneys' fees to [Opulent Watches], pursuant to a clause in the agreement that allows fees and costs only to "the prevailing party?"

Brief for Appellant, at 5-6 (unnecessary capitalization omitted).

In his first claim, Warner contends that the trial court erred by sustaining Yedwabnik's preliminary objections to Warner's UTPCPL claim. **See** Brief for Appellant, at 12-14. Warner argues that this case hinged on the credibility and competing narratives of the parties. **See id.** Warner asserts that the trial court's dismissal of his UTPCPL claim at the pleading stage constituted an abuse of discretion and an error of law. **See id.** at 14. Warner additionally contends that the trial court erred in granting $2,000.00 in sanctions to Yedwabnik. **See id.**

Warner has waived this claim because he failed to include it in his post-trial motion and in his Rule 1925(b) concise statement. **See** Pa.R.Civ.P. 227.1(b)(2) ("Grounds not specific [in the post-trial motion] are deemed waived[.]"); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Moreover, Warner's brief on this claim falls woefully short of our appellate briefing requirements. Warner cites to no relevant caselaw, rules, or anything in the record to support his claim. **See** Pa.R.A.P. 2119(b) (requiring citation to authorities); **id.** at (c) (requiring

citation to record). For these reasons, we conclude that Warner has waived this claim for our review.[4]

In his second claim, Warner argues that the trial court erred in allowing Opulent Watches LLC to change its name, mid-trial, to Opulent Watches, Inc. **See** Brief for Appellant, at 14-19. Warner contends that the trial court's order granting judgment in favor of "Opulent Watches" must be a legal nullity because Opulent Watches LLC is a non-existent entity. **See id.** Additionally, Warner contends that the statute of limitations, plus 90 days, had already expired and, pursuant to Pa.R.Civ.P. 1033(b), the trial court committed an error of law by allowing Opulent Watches to correct its name. **See** Brief for Appellant, at 14-19. We disagree.

It is well-settled that the trial court "enjoys 'broad discretion' to grant or deny a petition to amend" pleadings. **The Brickman Grp., Ltd v. CGU Ins. Co.**, 865 A.2d 918, 926 (Pa. Super. 2004) (citation omitted); **see General Mach. Corp. v. Feldman**, 507 A.2d 831, 834 (Pa. Super. 1986) (noting Rule 1033 is completely subject to trial court's discretion). We, therefore, adhere to an abuse of discretion standard in reviewing a trial court's order granting or denying a petition to amend. **See id.**

_____

[4] Furthermore, regarding Warner's $2,000.00 sanctions claim, we can only surmise that he is referencing the October 14, 2021, order that imposed sanctions in the amount of $2,000.00. However, as we noted **supra**, the trial court, on November 10, 2021, **withdrew** those sanctions. **See** Order, 11/10/21; **see also** Trial Court Opinion, 11/3/23, at 3. Consequently, even if that issue was preserved for our review, we are unable to discern how Warner would have been prejudiced by a sanctions order that was withdrawn.

Rule 1033 provides:

(a) A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

(b) An amendment correcting the name of a party against whom a claim has been asserted in the original pleading relates back to the date of the commencement of the action if, within 90 days after the period provided by law for commencing the action, the party received notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits and the party knew or should have known that the action would have been brought against the party but for a mistake concerning the identity of the proper party.

Pa.R.Civ.P. 1033(a)-(b).

It is "beyond peradventure that leave to amend pleadings has traditionally been liberally granted in this jurisdiction." *Biglan v. Biglan*, 479 A.2d 1021, 1025 (Pa. Super. 1984) (citations omitted); *see* Pa.R.Civ.P. 126 (providing "rules shall be liberally applied to secure the just, speedy, and inexpensive determination of every action or proceeding to which they are applicable"). "As can be seen from the clear language of Rule 1033, **no limit** is imposed on the time when an amendment may be made." *Thom v. CDM Auto Sales*, 221 A.3d 681, 684-85 (Pa. Super. 2019) (emphasis added). Thus, "[p]leadings may be amended at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, **at trial**, **after judgment**, **or** [**even**] **after an award has been made and**

**an appeal taken therefrom**.” **See Biglan**, 479 A.2d at 1025-26 (emphasis added) (citing **Sheppard v. First Pennsylvania Banking & Tr. Co.**, 184 A.2d 309, 311 (Pa. Super. 1962)); **see also Keller v. R.C. Keller Motor Co.**, 124 A.2d 105, 106 (Pa. Super. 1956) (noting pleadings may be amended at any stage of proceedings); **Trabue v. Walsh**, 177 A. 815, 816 (Pa. 1935) (“Pleadings may be amended **at any stage of the case**.”) (emphasis added).

This Court explained in **Biglan** that “[t]he fundamental purpose of this rule is to prevent cases from turning on purely technical defects. . . . [H]ypertechnicality and formalism in pleading are contrary to [the] modern practice of allowing free amendment in order to promote resolution of cases on their merits.” **Biglan**, 479 A.2d at 1026 (citations omitted). Nonetheless, a trial court may deny amendment of pleadings if there is resulting prejudice or surprise to the adverse party. **See id.** “[P]rejudice, in turn, must be more than a mere detriment to the other party because any amendment requested certainly will be designed to strengthen the legal position of the amending party and correspondingly weaken the position of the adverse party.” **MacGregor v. Madiq Inc.**, 576 A.2d 1123, 1126 (Pa. Super. 1990) (citation omitted).

The explanatory comment to Rule 1033(b) permits a plaintiff to “correct” the name of a party to “relate back” to before the expiration of the statute of limitations. **See** Pa.R.Civ.P. 1033(b) Cmt.; **see also Fick v. Barbon**, 237

A.3d 496 (Pa. Super. 2020) (Table).[5]  However, neither Rule 1033(b) nor its comment permit or contemplate a plaintiff adding or substituting another party after the statute of limitations has expired.  **See** Pa.R.Civ.P. 1033(b) Cmt.  Furthermore, the Explanatory Comment states that Rule 1033(b) is "consistent with existing case law and codifies current practice" and that "[t]he interests of justice are served by a rule of civil procedure permitting a party to correct a complaint that provides an incorrect name of a party when there is no prejudice to the party brought in by the amendment."  **Id.**

Regarding applicable caselaw, this Court has previously explained:

A plaintiff **may not add a new defendant** after the applicable statute of limitations has expired.  ***Hoare v. Bell Tel. Co. of Pa.***, 500 A.2d 1112 (Pa. 1985); ***Zercher v. Coca-Cola USA***, 651 A.2d 1133 (Pa. Super. 1994).  Thus, in cases where the statute of limitations has expired and a party seeks to amend its pleading to correct the name of [a] party, the issue is whether the proposed amendment adds a new party to the litigation or merely corrects a party name.  ***Jacob's Air Cond. v. Assoc. Heating***, 531 A.2d 494, 496 (Pa. Super. 1987).  "If an amendment constitutes a simple correcting of the name of a party, it should be allowed, ***Wicker v. Esposito***, 457 A.2d 1260 (Pa. 1983), but if the amendment in effect adds a new party, it should be prohibited. ***Cianchetti v. Kaylen***, 361 A.2d 842 (Pa. Super. 1976)." ***Jacob's Air Cond.***[,] ***supra*** . . . .  If the proper party was sued but under the wrong designation the correction will be allowed.  However, where the wrong party was sued and the amendment is designed to substitute another, distinct party, it will be disallowed. ***Hamilton v. Bechtel***, 657 A.2d 93 (Pa. Super. 1995).

***Ferraro v. McCarthy-Pascuzzo***, 777 A.2d 1128, 1132-33 (Pa. Super. 2001) (emphasis added) (some citations omitted, some citations modified).  Thus,

---

[5] Unpublished decisions of this Court filed after May 1, 2019 may be considered for their persuasive value.  **See** Pa.R.A.P. 126.

the caselaw is well-settled: "where the wrong party was sued and the amendment is designed to substitute another, distinct party, it will be disallowed." *Id.* at 1133. However, "if the amendment constitutes a simple correcting of the name of a party, **it should be allowed**." *See id.* (citing *Wicker*, 457 A.2d 1260) (emphasis added).

After reviewing the record, we agree with the sound reasoning of the trial court and conclude that the record supports its determinations. *See* Trial Court Opinion, 11/3/23, at 10, 13-16. In addition, we conclude that despite Warner's contentions, Rule 1033(b) does not apply to the instant name change, as paragraph (b) only applies to "amendment[s] correcting the name of a party **against whom a claim has been asserted in the original pleading**[.]" Pa.R.Civ.P. 1033(b) (emphasis added). Here, Opulent Watches, the **plaintiff**, brought a cause of action against Warner, the defendant. Thus, the original pleading was brought **against Warner**, and paragraph (b) does not apply to Opulent Watches' request to change its own name from "Opulent Watches LLC" to "Opulent Watches, Inc."[6] *See id.*

---

[6] We are aware that this Court in *Thom* stated that "under the current language of Rule 1033[(b)], pleadings may not be amended to correct **a party's name** if more than 90 days have passed since the expiration of the statute of limitations." *Thom*, 221 A.3d at 685 (emphasis added). Although *Thom* is a precedential decision of this Court, the quoted statement is non-binding *dicta*.

In *Thom*, this Court analyzed the applicability of Rule 1033**(a)**, which was before it, but went on to opine about the applicability of part **(b)** although not raised by the parties or the facts of the matter. *See id.* at 684-87. We, therefore, conclude that the statement relative to part **(b)** is dicta and we are not bound by it, nor do the facts herein compel a different analysis.

- 17 -

Moreover, even if Rule 1033(b) did apply, the record supports the trial court's finding that "Opulent Watches LLC" was a mere typographical error. Importantly, in granting Yedwabnik's Rule 1033 motion, the trial court did not substitute the plaintiff for another party, but rather corrected a simple typographical error that **did not change the parties whatsoever**. *See id*; *see also Wicker*, *supra*. Furthermore, because Rule 1033(b) was intended to codify the existing caselaw, and not abrogate it, we conclude that the name correction from "LLC" to "Inc." did not violate Rule 1033(b). *See* Rule 1033(b) Cmt.; *see also Ferraro*, *supra*. In reaching our conclusion, we emphasize that the instant name correction was not "bringing in a new party" or substituting a party, but rather correcting a typographical error in the plaintiff's party name. As recognized by the trial court, while the case proceeded initially under "Opulent Watches LLC," the plaintiff, Yedwabnik, his witnesses, and discovery, remained the same throughout the life of the case. *See* Trial Court Opinion, 11/3/23, at 13-16. When the trial court permitted the caption to be corrected to "Opulent Watches, Inc." the testifying plaintiff, witnesses, and discovery still remained the same. *See id.* Consequently, the trial court did not abuse its discretion or commit an error of law. Accordingly, Warner is not entitled to relief on this claim.

In his third claim, Warner argues that the trial court erred in finding Yedwabnik credible. *See* Brief for Appellant, at 19-25. Warner contends that the trial court "overlooked" various alleged inconsistencies and lies in Yedwabnik's testimony. *See id.* Warner asserts that Yedwabnik should have

- 18 -

been found to be incredible because he was unable to recall from where he purchased the watch and provided inconsistent testimony regarding whether he had "control" of Warner's funds after the sale of the watch. *See id.*

A challenge to the credibility of witnesses goes to the weight of the evidence. *See Berg v. Nationwide Mut. Ins. Co.*, 235 A.3d 1223, 1257 (Pa. 2020). We adhere to the following standard of review:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013) (en banc) (citation omitted). "The fact[-]finder is free to believe all, part, or none of the evidence to determine the credibility of the witnesses." *Samuel Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 39 (Pa. 2011). The trial court may award a new trial "only when the [] verdict is so contrary to the evidence as to shock one's sense of justice." *Haan v. Wells*, 103 A.3d 60, 69 (Pa. Super. 2014) (citation omitted). "In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id.* (citation omitted). When

a fact-finder's verdict is "so opposed to the demonstrative facts that[,] looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." *Id.* (citation omitted). "[O]ne of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence." *Armbruster v. Horowitz*, 813 A.2d 698, 703 (Pa. 2002) (citation, quotation marks, and brackets omitted).

The trial court addressed Warner's weight claim as follows:

Contrary to [Warner]'s assertion, [Yedwabnik] never testified to having a video that did not exist. The record shows Yedwabnik testified at trial regarding the motion-activated high definition 4K video camera that was installed over his workspace and recorded him packaging merchandise for shipment. He explained that the camera recorded him preparing the watch for shipment, with the serial number and accompanying documentation visible. He then had to step off camera to retrieve a larger box; the camera stopped recording when he left and then resumed recording when he returned with the box. Yedwabnik stated that the footage from the packaging portion of the video had been preserved because it was submitted to the credit card company during the charge-back investigation in order to verify the serial number [of the watch]. He further stated that the second [] video[,] where he placed the packaged watch into the FedEx box[,] had been destroyed as part of the routine deletion process to reuse storage space on the server. He testified that this portion of the video was not maintained because it was not needed for the charge-back investigation and he did not anticipate needing it in the future. This [c]ourt, after listening to Yedwabnik testify and observing his demeanor on the stand, found his explanation to be credible.

* * *

As stated above, this [c]ourt, sitting as fact-finder, carefully listened to the testimony, observed the demeanor of each witness,

viewed the proffered exhibits, including pictures of the fake watch provided by [Warner] as compared to pictures of the real watch, which contained a registered serial number, provided by [Yedwabnik], and found [Yedwabnik]'s testimony and evidence to be credible and found [Warner]'s to be incredible.

Trial Court Opinion, 11/3/23, at 25-26.

Upon review of the record, we discern no abuse of the trial court's discretion. *See Haan*, *supra*. We emphasize that the trial court, sitting as the fact-finder, is free to believe all, part, or none of the evidence when determining a witness's credibility. *See Samuel-Bassett*, *supra*. Accordingly, Warner is entitled to no relief on this claim.

In his fourth claim,[7] Warner argues that the trial court committed an error of law in awarding attorney's fees to Yedwabnik, pursuant to the terms and conditions on the Opulent Watches website. *See* Brief for Appellant, at 26-29. Warner contends that to be awarded attorney's fees, under those terms and conditions, Yedwabnik was required to be the "prevailing party." *See id.* Warner asserts that although Yedwabnik may have prevailed on one claim, Warner prevailed on two out of three originally filed claims. *See id.* at

---

[7] We observe that Warner has included five separate and distinct claims in the argument section of his brief, but only four in the statement of questions involved section of his brief in violation of our appellate rules. *See* Pa.R.A.P. 2116(a) (claims not contained in statement of questions involved will not be considered). Consequently, we determine that Warner has waived his "conversion claim" for our review. *See* Brief for Appellant, at 25-26; Pa.R.A.P. 2116(a). Additionally, we address his "attorney's fees" claim as his fourth claim, as it was so named in his statement of questions involved. *See* Brief for Appellant, at 5-6.

28. Warner posits that he, not Yedwabnik, is the "prevailing party." ***See id.*** at 28-29.

In addressing this issue, we are mindful that the interpretation of a contract is a question of law, and our standard of review is plenary. ***Flanagan v. Fidelity Bank***, 652 A.2d 930, 932 (Pa. Super. 1995). "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, **a clear agreement of the parties**, or some other established exception." ***Trizechahn Gateway LLC v. Titus***, 976 A.2d 474, 482-83 (Pa. 2009) (emphasis added). "[A]greements entered into at arms length are generally enforced according to their terms to allow parties the benefit of their bargains." ***Vinculum, Inc. v. Goli Technologies, LLC***, 310 A.3d 231, 244 (Pa. 2024) (citation omitted). "Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial recession of a contract." ***Snow v. Corsica Constr. Co., Inc.***, 329 A.2d 887, 889 (Pa. 1974) (quotation omitted). "Nor can a court alter the terms of a contract under the guise of construction . . . whether in wisdom or folly, expressly agreed." ***Vinculum***, ***supra*** (quotation and citation omitted).

In ***Profit Wize Marketing v. Wiest***, 812 A.2d 1270 (Pa. Super. 2002), this Court considered that the term "prevail" means "to gain ascendancy through strength or superiority:  TRIUMPH." ***Id.*** at 1275 (quoting Merriam Webster's Collegiate Dictionary, 7th Ed. At 924).  Further, Black's Law

Dictionary has defined "prevail" as "to obtain the relief sought in an action; to win a lawsuit[.]" *Id.* (quoting Black's Law Dictionary, 7th Ed. at 1206). After considering these definitions, this Court concluded "the noun, [']prevailing party,['] is commonly defined as [']a party in **whose favor a judgment is rendered, regardless of the amount of damages awarded.**[']" *Id.* at 1275-76 (emphasis added).

Instantly, the Opulent Watches website provided the following terms and conditions, which the trial court found were included in the parties' contract for the sale and purchase of the watch:

> By visiting our site and/or purchasing something from us, you engage in our service and agree to be bound by the following terms and conditions. . . . The parties agree that this agreement will be construed an enforced pursuant to the laws of the Commonwealth of Pennsylvania. Jurisdiction of all disputes shall be in Philadelphia County. The **prevailing party shall be entitled to all costs and collection[] of attorney's fees**.

N.T. Trial, 6/28/23, at 229 (emphasis added).

Warner has never disputed that he agreed to the above terms.[8] *See* Trial Court Opinion, 11/3/23, at 20. Additionally, the terms make clear that attorney's fees would be awarded to the "prevailing party" for any and all disputes. Indeed, there is no provision limiting attorney's fees to only specific causes of action.

We conclude that the trial court properly found Yedwabnik to be the prevailing party. Indeed, the trial court found Yedwabnik to be credible and

_____

[8] Moreover, Warner does not dispute, and has not disputed, that these terms and conditions were part of the sales contract for his purchase of the watch.

ruled in his favor at trial and entered judgment accordingly. *See* Trial Court Opinion, 11/3/23, at 19. Furthermore, the court entered judgment **against** Warner at trial, and, thus, he could not be the prevailing party. *See id.* Consequently, Yedwabnik was the prevailing party as contemplated by our case law, and the trial court did not err in awarding him attorney's fees. *See Profit Wize Marketing*, *supra*.

Based upon the foregoing, we conclude that the trial court did not err as a matter of law or abuse its discretion, and we affirm the judgment.

Judgment affirmed.

Lane, J., Joins the Memorandum.

Stabile, J., Concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/20/2024